# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
*By cking at 9:37 am, Apr 04, 2008*

|  |  |  |
|---|---|---|
| In the matter of: | ) | Adversary Proceeding |
|  | ) |  |
| FRIEDMAN'S, INC., et al., | ) | Number <u>07-4099</u> |
| (Chapter 11 Case Number <u>05-40129</u>) | ) |  |
|  | ) |  |
| *Debtor* | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| FRIEDMAN'S, INC., et al., | ) |  |
|  | ) |  |
|  | ) |  |
| *Plaintiff* | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| LEO SCHACHTER | ) |  |
| DIAMONDS, LLC | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

## MEMORANDUM AND ORDER
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, Friedman's Inc., et al., filed Chapter 11 on January 14, 2005.

Plaintiff's First Amended Plan of Reorganization was confirmed on November 23, 2005, and

the Plaintiff emerged from bankruptcy on December 9, 2005. On June 14, 2007, Plaintiff

filed an Adversary Proceeding pursuant to 11 U.S.C. §547 to avoid a wire transfer to

Defendant, Leo Schachter Diamonds, LLC, which occurred on or around November 18, 2004 in the amount of $455,135.72. After filing its answer, Defendant filed a Motion for Summary Judgment on February 4, 2008. Plaintiff filed its Response on February 27, 2008. On March 13, 2008, Defendant replied to Plaintiff's response.

Defendant argues that the wire transfer of $455,135.72 on or around November 2004 was (1) a payment constituting Plaintiff's purchase of Defendant's merchandise in a contemporaneous exchange for new value given and not on account of an antecedent debt; and (2) a transaction that was customary for both the fine jewelry industry and these parties, and occurred within the ordinary course of business for Plaintiff. As a result, Defendant argues that the Trustee/Adversary Plaintiff can not employ the avoidance powers of 11 U.S.C. §547. For the following reasons, Defendant Leo Schachter Diamonds, LLC's Motion for Summary Judgment is **DENIED**.

Defendant is a diamond and jewelry wholesaler in the business of providing retail jewelry outlets with loose and mounted diamonds for sale to their respective customers. Defendant does this through consignment agreements with retail establishments. Plaintiff is a retailer who on August 22, 2002 entered into such a consignment agreement, where Plaintiff was provided with select merchandise to hold in trust until such time as the merchandise is sold to its customers or returned to Defendant. Motion for Summary Judgment, Dckt. No. 11, Exhibit A (February 4, 2008).

On October 8, 2002, the two parties entered into a "Letter Agreement," which modified and/or explained the terms and scope of the August 2002 consignment agreement. "The purpose of the Letter Agreement was to memorialize a business practice between the parties whereby Friedman's was permitted to purchase previously consigned merchandise of Schachter's in a separate transaction." The Letter Agreement provides that once a purchase in this manner is made, any rights of ownership retained by Defendant under the Consignment Agreement would be terminated or transferred to Plaintiff. Id., pg. 2 & Exhibit B.

On or around November 18, 2004, Plaintiff wire transferred $455,135.72 to Defendant. The parties dispute whether this wire transfer was a purchase of consigned collateral or whether this was a payment on an antecedent debt. In its Motion for Summary Judgment, Defendant asserts pursuant to the "new value" exception of §547(c)(1) that the payment constituted Plaintiff's purchase of Defendant's merchandise in a contemporaneous exchange for new value given and not on account of an antecedent debt. In support of this argument, Defendant recited the facts as follows:

> In late 2003 and 2004, Friedman's was in possession of substantial amounts of cosigned Schachter merchandise; loose samples; and mounted samples belonging to Schachter. In late September and October 2004, portions of Schachter's Cosigned Merchandise was recalled by Schachter and returned by Friedman's. Additionally during this time period, Friedman's reconciled portions of the Consigned Merchandise pursuant to the Consignment Agreement by tendering to Schachter proceeds obtained

from the sale of Consigned Merchandise to Friedman's customers. Following this recall/return and reconciliation, Friedman's remained in possession of a significant amount of Schachter Consigned Merchandise. In 2004, Schachter made repeated requests to Friedman's for the return or recall of its Consigned Merchandise and return of the loose and mounted samples also in Friedman's possession.

In or around November 2004, Friedman's and Schachter were making efforts to reconcile all outstanding Consigned Merchandise in Friedman's possession. Around this time period, Friedman' was unable to physically locate or account for the Cosigned Merchandise and samples that were in Friedman's possession, and Friedman's offered to purchase the previously consigned goods and samples. At the time of the transfers at issue in the present litigation, Friedman's remained in possession of approximately $309,940.77 of Consigned Merchandise; $65,828.99 of mounted samples; and $10,245.24 of loose samples all belonging to Schachter, and Schachter had incurred approximately $62,000 in inventory/restocking fees on account of the returns and conversions of Consigned Merchandise. On or about November 18, 2004, Friedman's purchased the Consigned Merchandise, loose samples, mounted samples and paid restocking fees in a combined wire transfer.

Id., pg. 2-4(internal citations omitted).

These facts are generally supported by the affidavit of Seth Gordon in support of Defendant's motion. Mr. Gordon was "responsible for communicating and negotiating with representatives of Friedman's Inc. regarding the consignment of Schachter merchandise pursuant to the consignment agreement entered into by and between Leo Schachter Diamonds, LLC and Friedman's Inc. on August 22, 2002 . . ." Id., Exhibit C.

In response, Plaintiff argues that "$269,407.69 of the total payment was actually a payment of past due, disputed invoices for other goods which were not covered by the consignment security interest or for other fees and charges not secured by any collateral." Plaintiff does concede that some "$175,728.03 of the total payment was intended for purchase of consigned goods in which Defendant enjoyed a properly perfected security interest." Plaintiff's Response to Defendant's Motion for Summary Judgment, Dckt. No. 17, pg. 1-2 (February 27, 2008). Plaintiff's argument is supported by the Affidavit of Michael Purvis, an employee of Friedman's Inc. who had "personal knowledge of the facts and circumstances leading up to the wire transfer of November 18, 2004." Id., Exhibit A.

In addition to the "new value" exception, Defendant also asserts the "ordinary course of business" exception under 11 U.S.C. §547(c)(2). Defendant argues that this transaction was customary in the fine jewelry industry and between these parties and occurred within the ordinary course of business for Plaintiff. Defendant asserts this defense in three ways. First, Defendant argues that the Disclosure Statement with respect to the Joint Plan of Reorganization filed with the Court on August 4, 2005 stated "Friedman's was operating in its ordinary course of business up until January 11, 2005, when funding limitations prevented it from meeting its cash requirements in the ordinary course of business." Second, Defendant argues that the "Letter Agreement dated October 8, 2002 establishes that the variety of transfer at issue is consistent and 'ordinary' as compared to the past practices and arrangements between the parties." Third, the affidavit testimony of Mr. Gordon establishes that this transaction is customary in the fine jewelry industry. Defendant's

Motion for Summary Judgment, Dckt. No. 11, pg.8-10; *see* Id., Exhibit C & Exhibit H.

Plaintiff responds to Defendant's assertions in the following four ways. First, Plaintiff argues the Disclosure Statement made it clear that the business was in financial trouble leading up to its filing for bankruptcy. The Disclosure Statement stated that Plaintiff was "'significantly behind in payments to vendors' in June of 2004." Second, Plaintiff points out that "Plaintiff was also under investigation by the SEC and the United States Attorney's Office for the Eastern District of New York for alleged accounting irregularities in the months leading up to the bankruptcy." Third, Plaintiff argued:

> Specifically, in response to Plaintiff's defaults with its many vendors, Plaintiff put forward a repayment proposal now known as the "Prepetition Trade Vendor Program" in June of 2004. The program was offered to Plaintiff's vendors (of which Defendant was one) as a means of avoiding bankruptcy. To fund the program, Plaintiff borrowed an additional $67.5 million dollars. This line of credit became known as the "Prepetition Facility." Unfortunately, Plaintiff's financial problems were too great and the program showed signs of failure in the Fall of 2004. It should be noted that Defendant rejected Plaintiff's offer of the repayment program and pursued its rights as a creditor through litigation. Shortly after receiving notice that Plaintiff was in default under the terms of the Prepetition Facility, Plaintiff found it necessary to file for bankruptcy under Chapter 11, and did file its petition on January 14, 2005.

Fourth, Plaintiff argues that Mr. Purvis "has testified in his attached affidavit that the parties were acting outside of their normal business relationship and that such acts were outside the

customary business practices of the jewelry industry as a whole." Plaintiff's Response to Defendant Motion for Summary Judgment, Dckt. No. 17, pg. 10-11.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed. 265 (1986). Rule 56 of the Federal Rules of Civil Procedure applies to motions for summary judgment in bankruptcy adversary proceedings. *See* Fed.R.Bankr.Proc. 7056. The party moving for summary judgment has the burden of demonstrating that no dispute exists as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once this burden is met, the nonmoving party must present specific facts that demonstrate that there is a genuine dispute over material facts. Finally, a court reviewing a motion for summary judgment must examine the evidence in light most favorable to the non-moving party, and all reasonable doubts and inferences should be resolved in the favor of the non-moving party. In re Davis, 374 B.R. 362, 364 (Bankr.S.D.Ga. 2006).

## DISCUSSION

Since Plaintiff filed its petition before October 17, 2005, this issue is governed by the law prior to the enactment of the Bankruptcy Abuse Prevention and

Consumer Protection Act ("BAPCPA"). Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. §547, the trustee is permitted to recover with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed. In relevant part, § 547(b) provides: "(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property- (4) made- (A) on or within 90 days before the date of the filing of the petition." "This avoidance provision is designed 'to accomplish proportionate distribution of the debtor's assets among its creditors, and therefore to prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all.'" In re Southern Air Transport, Inc., 511 F.3d 526, 530 (6th Cir. 2007)(quoting In re Shelton Harrison Chevrolet, Inc., 202 F.3d 834, 837 (6th Cir. 2000)).

Section 547(c) sets apart certain transfers that are not recoverable as preference, even if they fall within the 90-day preference period. The first statutory provision at issue is referred to as the "new value" exception. Section 547(c)(1) states:

> (c) The trustee may not avoid under this section a transfer-
> (1) to the extent that such transfer was- (A)intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."

In its Motion for Summary Judgment, Defendant asserts that the wire transfer constituted

Plaintiff's purchase of Defendant's merchandise in a contemporaneous exchange for new value given and not on account of an antecedent debt. Plaintiff, on the other hand, argues that at least $269,407.69 of the total payment was actually a payment of past due, disputed invoices for other goods which were not covered by the consignment security interest or for other fees and charges not secured by any collateral.

Defendant relies on several exhibits that showed Plaintiff was in possession of consigned merchandise at the time of the wire transfer and that Defendant incurred restocking fees around the time of the wire transfer. However, the only evidence establishing that the wire transfer was in fact a purchase of this specific consigned merchandise arises from the affidavit of Mr. Gordon. *See* Motion for Summary Judgment, Dckt.No. 11, pg. 3-4. In reply, Plaintiff disputes Defendant's evidence with an affidavit of its own in which Mr. Purvis stated "$269,407.69 of the total payment was actually a payment of past due, disputed invoices for other goods which were not covered by the consignment security interest or for other fees and charges not secured by any collateral." Plaintiff's Response to Defendant's Motion for Summary Judgment, Dckt. No. 17, pg. 1-2.

The second statutory provision at issue is referred to the "ordinary course of business" exception. A trustee/debtor may not avoid a transfer if the payment was:

> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial
affairs of the debtor and the transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (2005)

"The purpose of the ordinary-course-of-business defense is 'to leave undisturbed normal financial relations.'" "The defense 'should protect those payments which do not result from unusual debt collection or payment practices.'" In re Forex Fidelity Intern., 222 Fed.Appx. 806, 809 (11th Cir. Jan. 5, 2007)(*quoting* In re Craig Oil Co., 785 F.2d 1563, 1566 (11th Cir. 1986)(internal quotation omitted)). "Resolution of this exception 'turns on the specific events surrounding [Debtor's] payments to [the creditor].'" In re Ryan, 1999 WL 33581624 (Bankr.S.D.Ga. 1999).

"[A] creditor asserting that a transfer falls within §547(c)(2) bears the burden of proving each of the three elements." "Although the first two elements of the defense pertain to the conduct of the parties toward one another, the third element involves a broader inquiry." In re A.W. & Assoc., Inc., 136 F.3d 1439, 1441 (11th Cir. 1998). In proof of the third element, Defendant relies on the affidavit testimony of Mr. Gordon which states that this type of transaction is customary in the fine jewelry industry. In response, Plaintiff relies on a counter-affidavit which asserts that this type of transaction is not customary in the fine jewelry industry.

Under Fed.R.Civ.P. 56, any genuine issue of material fact precludes summary judgment. Summary judgment can not be invoked where, as here, the affidavits present conflicting versions of the facts which require a trial. *See* Tippens v. Celotex, 805 F.2d 949, 953 (11th Cir. 1986)("[T]he [bankruptcy] court must not resolve factual disputes by weighing conflicting evidence, since it is the province of the [trier of fact] to assess the probative value of the evidence. The [bankruptcy] court must not 'assess [ ] the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment.'"); Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979); Eichman v. Indiana State University Bd. Of Trustees, 597 F.2d 1104, 1108-09 (7th Cir. 1979); U.S. v. Conservation Chemical Co., 619 F.Supp. 162, 179 (W.D.Mo. 1985)("If the evidence presented to support or oppose the motion is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper."); Darby v. U.S., 496 F.Supp. 943, 945 (S.D.Ga. 1980).

An examination of the counter-affidavit of Mr. Gordon makes it clear that there is at least one, and perhaps several genuine issues of material fact as to both the new value and ordinary course of business defenses asserted by Defendant Leo Schachter Diamonds, LLC. As a result, summary judgment is not appropriate and the case will be set for final pretrial by separate order.

## O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that

Defendant's motion for summary judgment is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 3ʳᵈ day of April, 2008.